**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **Diana Rattler-Bryceland and Phillip Randall Hampton on behalf of themselves and all those similarly situated,** | § § § § | **Civil Action No. 5:22-cv-00106-R** |
| **Plaintiffs,** | § § § | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |
| **v.** | § § | |
| **Boutchantharaj Corp., d/b/a DFW Security Protective Force.,** | § § § | |
| **Defendant.** | § | |

# PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION AND BRIEF FOR PARTIAL SUMMARY JUDGMENT


George J. McCaffrey, OBA#5851
McCaffrey & Associates, PLLC
P.O. Box 23865
Oklahoma City, OK 73123
Telephone: (405) 767-3300
Facsimile: (405) 767-3309
Email: George@McCaffreyLegal.com

Joseph H. Gillespie
Texas State Bar No. 24036636
Email: joe@gillespiesanford.com
GILLESPIE SANFORD LLP
4803 Gaston Ave.
Dallas, Texas 75246
Phone: (214) 800-5111
Fax: (214) 838-0001

ATTORNEYS FOR PLAINTIFFS

## TABLE OF CONTENTS

I. Introduction .......... 1

II. Statement of Facts Precluding Summary Judgment .......... 3

A. Defendant Is In Violation of the Plain Language of the FLSA and SCA .......... 3

B. Despite the Court's Ruling On May 18, 2023, Defendant Continues To Violate the FLSA and SCA .......... 3

C. Defendant Incredibly Claims to Not Understand the Court's May 18, 2023 Order .......... 3

D. DFW Security - A Federal Contractor With Multiple Contracts – Has No Documentation That Establishes It Ever Sought Approval or Instruction On The Proper Method For Calculating Overtime .......... 4

E. Defendant Undertook No Effort To Ensure Compliance with the FLSA .......... 5

F. DFW Security Intends To Continue to Violate the FLSA .......... 6

G. Defendant Continues To Violate the FLSA At Its Other Facilities .......... 6

III. Argument .......... 6

A. Summary Judgment Standard of Review .......... 6

B. Willfulness Under the FLSA .......... 7

C. The Issue of Defendant's Good Faith And Reasonableness Defense, Which is Relevant to Liquidated Damages, Is Not Before The Court .......... 8

D. Defendant's Ongoing Willful Violation of the FLSA Is Evidence of Prior Willfulness .......... 9

E. Defendant Has Failed to Submit Competent Summary Judgment Evidence ........ 14

F. Defendant's Actions Evidence A Reckless Disregard ........ 18

G. DFW Security Has Other Violations of the FLSA – It Retaliated Against Plaintiff Rattler-Bryceland By Suspending Her After She Filed This Lawsuit ........ 20

H. Defendant Advertises An Hourly Rate That Includes The Items It Improperly Excludes From The Regular Rate When Calculating Overtime ........ 21

I. Defendant Withholds Money From Paychecks But Then Does Not Use It For Intended Purpose ........ 22

IV. Conclusion ........ 22

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Barnes v. Akal Sec., Inc.*,
2005 WL 1459112 (D. Kan. June 20, 2005) ....................................2, 5, 18, 19

*Bones v. Honeywell Int'l, Inc.*,
366 F.3d 869 (10th Cir. 2004) ......................................................................15

*Bonner v. Metro. Sec. Servs., Inc.*,
2011 WL 902252 (W.D. Tex. Mar. 15, 2011) ................................2, 5, 18, 19

*Boyer v. Celerity Sols. Grp., LLC*,
482 F. Supp. 3d 1122 (D. Colo. 2020) .....................................................8, 18

*Garrett v. Hewlett-Packard Co.*,
305 F.3d 1210 (10th Cir. 2002) ....................................................................15

*McLaughlin v. Richland Shoe Co.*,
486 U.S. 128, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988)...........................7, 8

*Mumby v. Pure Energy Services (USA), Inc.*,
636 F.3d 1266 (10th Cir. 2011) ...........................................................7, 8, 18

*Perez v. El Tequila, LLC*,
2015 U.S. Dist. LEXIS 171446 (N.D. Okla., 2015) .....................................13

*Reeves v. Sanderson Plumbing*,
520 U.S. 133 (2000) ......................................................................................17

*Reich v. Monfort, Inc.*,
144 F.3d 1329 (10th Cir. 1998) ..................................................................7, 8

*Renfro v. City of Emporia*,
948 F.2d 1529 (10th Cir. 1991) ..................................................................8, 9

*St. Mary's Honor Center v. Hicks*,
509 U.S. 502 (1993) ......................................................................................17

Representative Plaintiffs, Diana Rattler-Bryceland and Phillip Randall "Randy" Hampton, on behalf of themselves and all opt-in Plaintiffs ("Plaintiffs"), file this response brief in opposition to the motion for partial summary judgment filed by Defendant Boutchantharaj Corp. d/b/a DFW Security Protective Force (hereinafter referred to as "DFW Security" or "Defendant"). Plaintiffs respond in opposition as follows:

## I. Introduction

There is only one narrow, but important, issue before the Court. Is there sufficient evidence for a reasonable jury to conclude that Defendant's ongoing violation of the FLSA is "willful" as defined under the statute and caselaw? If the answer is yes, the period of damages reaches back three years prior to each opt-in plaintiff joining the litigation instead of two years. There are several established *and* disputed facts demonstrating that Defendant's motion for partial summary judgment should be denied:

It is an undisputed fact that Defendant was found in violation of the FLSA by this Court on May 18, 2023. It is also undisputed, that since that time, Defendant has taken zero corrective actions and continues to violate the FLSA each pay period. Defendant has taken the position that it will only comply with the Court's May 18, 2023 order when appeal opportunities have been exhausted. A reasonable jury may draw a inference that Defendant's ongoing willful violation of the FLSA is some evidence of prior willfulness.

Defendant's president and CEO, Mr. Boutchantharaj, who also acted as the company's 30b6 witness, claims to not understand the meaning of the Court's May 18, 2023 ruling despite being college educated with an advanced degree and running a

company that holds numerous federal contracts. A reasonable jury may see this as not credible, and evidence of mendacity.

Defendant has failed to submit admissible summary judgment evidence in support of its motion, instead submitting a declaration based upon conclusory arguments. Defendant has not met its summary judgment burden.

Defendant undertook no effort to research relevant case law regarding compliance with the FLSA prior to this litigation, including failing to do even a simple Google search that would have revealed the cases relied upon by the Court within the May 18, 2023 order, both of which predate this litigation by numerous years. *Barnes* was issued in 2005. *Bonner* was issued in 2011.

Defendant, a federal contractor, has no documentation that it ever communicated with any federal agency seeking approval or instruction on the proper method of calculating overtime for its employees.

Defendant continues to violate the FLSA at its other federal facilities and plans to continue doing so.

Defendant has also violated the FLSA by retaliating against Plaintiff Rattler by suspending her within days of this action being filed in court.

For these reasons alone, there is more than sufficient evidence, disputed and undisputed, which may lead a reasonable jury to a finding of willfulness in this FLSA case and Defendant's motion for partial summary judgment should be denied.

## II. Statement of Facts Precluding Summary Judgment

### A. Defendant Is In Violation of the Plain Language of the FLSA and SCA

1. On May 18, 2023, the Court ruled that the "plain language" of the Service Contract Act ("SCA"), as found in Section 6707(e) of the act, "provides that the regular rate does not include any fringe benefit payments that are excluded from the regular rate under the FLSA." Order, p. 7.

2. The Court further held that DFW's uniform maintenance payments and health and welfare payments are not excluded from the regular rate under the FLSA and they are therefore not excluded from the regular rate under the SCA when calculating overtime pay. *Id.*

3. The Court concluded the Order by holding, "The Court finds that DFW has violated the FSLA by failing to include the uniform maintenance and health and welfare payments in the regular rate when calculating overtime pay." *Id.* p. 8

### B. Despite the Court's Ruling On May 18, 2023, Defendant Continues To Violate the FLSA and SCA

4. After reading the Court's May 18, 2023 Order, Defendant has not taken any action to change its method of calculating overtime, and it is still paying employees the same way, in violation of the FLSA, even though the Company understands the Court ruled that those methods are in violation of the FLSA. (30b6 22:14—23:8, APP 026; 30b6 58:4-13)

### C. Defendant Incredibly Claims to Not Understand the Court's May 18, 2023 Order

5. Mr. Boutchantharaj served as the Company's 30(b)(6) witness for all topics

within a deposition which occurred on September 7, 2023. (30b6 9:2-16, APP 014; Ex. 1, APP 002; 30b6 10:16-23, APP 015)

6. Mr. Boutchantharaj is the president of the Defendant and has been since 2006. (30b6 10:24—11:4, APP 015)

7. Mr. Boutchantharaj immigrated to the United States with his family when he was three months old, grew up in California and then Texas, eventually attended the University of Texas, and received an MBA from Texas Christian University. (30b6 17:6—18:24, APP 021)

8. Despite an impressive personal and academic background, when read the sentence of the Court's order that stated, "The Court finds that DFW has violated the FLSA by failing to include the uniform maintenance and health and welfare payments in the regular rate when calculating overtime pay," Mr. Boutchantharaj could not bring himself to say that the company understood that the sentence meant "the judge was telling the company that it had violated the FLSA". (30b6 17:6—20:7; APP 021) Instead, the Company claims that the order was not sufficiently clear. (30b6 20:8-13, APP 024)

### D. DFW Security - A Federal Contractor With Multiple Contracts – Has No Documentation That Establishes It Ever Sought Approval or Instruction On The Proper Method For Calculating Overtime

9. As briefed below, Defendant has provided only the conclusory and unsupported declaration of Mr. Boutchantharaj in support of its motion for summary judgment. The declaration claims to be based upon personal knowledge but Mr. Boutchantharaj's deposition made it clear that his declaration was not based upon personal knowledge or even review of company documents.

10. Other than the unsupported conclusion of Mr. Boutchantharaj that the Company "must have" had communications with federal agencies regarding how to properly calculate the regular rate and overtime of employees, the Company, a federal contractor with numerous federal contracts across the United States, has no records that establish any such communications. (30b6 39:1—40:6, APP 036)

**E. Defendant Undertook No Effort To Ensure Compliance with the FLSA**

11. As the president since 2006, Mr. Boutchantharaj admits it is his job to oversee the key personnel who would be in contact with federal agencies to ensure compliance with the FLSA and the buck stops with him on compliance issues. (30b6 62:1-22, APP 047)

12. But before this suit was filed, DFW Security had never communicated with legal counsel in an effort to determine if it was calculating overtime correctly. (30b6 58:20-25, APP 044)

13. Prior to the lawsuit being filed, the Company had also not reviewed the reported cases cited to by the Court in the May 18, 2023 order, *Barnes v. Akal Security, Inc.* or *Bonner v. Metropolitan Security Services, Inc.*(30b6 64:24—65:9, APP 048 Ex. 4 and Ex. 5, APP 127; and 30b6 66:7-13, APP 050)

14. The Company had employees who had, as part of their job duties, the responsibility of going online and searching information to ensure that the Company was following the FLSA, but the Company never reviewed *Barnes* or *Bonner* despite those cases being available by a simple Google search. (30b6 159:19—160:24, APP 110, 156:9-22, APP 108, and 157:5-15, APP 109)

### F. DFW Security Intends To Continue to Violate the FLSA

15. The Company openly stated at its recent deposition that it will not follow the Court's May 18, 2023 order until the Company "gets clear, direct guidance from all agencies that regulate our government contract." (30b6 24:19—26:18, APP 028)

16. The Company also claimed that it, "didn't fully understand the language of the ruling" and will comply with the Judge's ruling only after it has exhausted all appeal options. (30b6 64:3-21, APP 048)

### G. Defendant Continues To Violate the FLSA At Its Other Facilities

17. In addition to the Plaintiffs within the Oklahoma City facility, Defendant has four other government contracts wherein guards are providing services at federal facilities. (30b6 82:15—83:13, APP 061)

18. Defendant continues to withhold health and welfare benefits, and uniform allowance, from its calculation of the regular rate throughout the company when calculating overtime. (30b6 22:14—23:8, APP 026; 30b6 58:4-13)

## III. Argument

### A. Summary Judgment Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.... An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citing Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." Id. at 670–71 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." Id. at 671 (citing Fed. R. Civ. P. 56(e)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

**B. Willfulness Under the FLSA**

Under the FLSA, a two-year statute of limitations applies to overtime claims unless a violation is "willful," in which case a three-year statute of limitation applies. 29 U.S.C. § 255(a). An action is "willful" if the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Mumby v. Pure Energy Services (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011)(citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988)). "Reckless disregard can be shown through 'action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007)); *see also Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998)(the standard for determining whether a violation of the FLSA is willful, knowing, or reckless "is whether the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]'") (quoting *McLaughlin*, 486

U.S. at 133 (1988)). "The employee has the burden of proving the employer acted willfully." *McLaughlin*, 486 U.S. at 135.

Whether an FLSA violation is willful is a mixed question of law and fact. *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998). Therefore, if there is a disputed fact which the jury *may* weigh in favor of Plaintiffs, even if the Court disagrees, summary judgment should be denied. *See e.g., Boyer v. Celerity Sols. Grp., LLC*, 482 F. Supp. 3d 1122, 1136 (D. Colo. 2020)("The Court doubts that a jury will find willfulness in this case. However, the Court's only role is to determine whether there is a genuine dispute about it. The Court thus finds that there is a genuine dispute as to whether defendants' FLSA violations were willful, and therefore, plantiffs' motion for summary judgment is DENIED on the issue of the applicable statute of limitations.")

**C. The Issue of Defendant's Good Faith And Reasonableness Defense, Which is Relevant to Liquidated Damages, Is Not Before The Court**

Generally, an employer in violation of the FLSA is liable for both compensatory damages as well as "an additional equal amount as liquidated damages," essentially doubling the plaintiffs' damage award. 29 U.S.C. § 216(b); *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1272 (10th Cir. 2011). The purpose behind liquidated damages in the FLSA context lies in "the reality that the retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Renfro v. City of Emporia*, 948 F.2d 1529, 1540 (10th Cir. 1991) (internal quotations marks omitted); *Id*. "The employer has the plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and

predicated upon such reasonable grounds . . . in the absence of such a showing the district court has no discretion to mitigate an employer's statutory liability for liquidated damages." *Renfro v. Emporia*, 948 F.2d 1529, 1540 (10th Cir. 1991).

Here, Defendant's motion for partial summary judgment does not mention "good faith", "reasonableness", or "liquidated damages" and instead only discusses the issue of willfulness as it relates to the three-year versus two-year statute of limitations. Therefore, the issue of Defendant's good faith and reasonableness defense, as it relates to liquidated damages and upon which Defendant bears the burden of proof at trial, is not before the court. This is worth mentioning at the onset of this response to avoid confusion or co-mingling of standards in the Court's review of the Defendant's motion for partial summary judgment.

**D. Defendant's Ongoing Willful Violation of the FLSA Is Evidence of Prior Willfulness**

On May 18, 2023, this Court issued an order which stated that Defendant's actions were in violation of the plain language of the FLSA. Within the order, this Court ruled:

> DFW contends § 6707(e) is completely silent as to whether an employer satisfying its obligations to provide fringe benefits by making equivalent cash payments must include these payments in the regular rate. On the contrary, § 6707(e) specifically instructs employers to exclude "any fringe benefit payments computed under this chapter" that are excluded under the FLSA." . . . Accordingly, with respect to the specific issue presented here, there is no gap or silence for the agency to fill and deference to the DOL regulations, which contradict the plain language of the statute, is inappropriate. . .
>
> The plain language of § 6707(e) provides that the regular rate does not include any fringe benefits that are excluded from the regular rate under the FLSA. DFW's uniform maintenance payments and health and welfare payments are not excluded from the regular rate under the FLSA and they

> are therefore not excluded from the regular rate under the SCA when calculating overtime pay.
>
> The Court finds that DFW has violated the FLSA by failing to include the uniform maintenance and health and welfare payments in the regular rate when calculating overtime pay.

(Docket No. 28, May 18, 2023 Order)

Defendant became aware of the Court's May 18, 2023 Order in May of 2023. (30b6 13:21—14:20, APP 017; Ex. 3 119). Defendant read the May 18, 2023 Order when it was issued by the Court. (30b6 14:25—15:6, APP 018). The Company president and CEO, despite an impressive academic background, when read the final sentence of the Court's order that states, "The Court finds that DFW has violated the FLSA by failing to include the uniform maintenance and health and welfare payments in the regular rate when calculating overtime pay," could not bring himself to initially say that the company understood that the sentence meant "the judge was telling the company that it had violated the FLSA". (30b6 17:6—20:7; APP 021) Instead, he first chose to claim that the order was not sufficiently clear. (30b6 20:8-13, APP 024)

After reading the Court's ruling, the Company allegedly chose to "re-review all of the rules and regulations that we felt as a company that we're regulated by from the SCA and the Department of Labor to ensure that we're not breaking no rules, and then we forwarded this [the Order] to our legal counsel." (30b6 21:19—22:13, APP 025). The Company admits it has not taken any action to change its method of calculating overtime, and it is still paying employees the same way (in violation of the FLSA) throughout the company, even though the Company understands the Court ruled that those methods are in

violation of the FLSA. (30b6 22:14—23:8, APP 026; 30b6 58:4-13) The Company's president and CEO, acting as its 30(b)(6) witness also stated that the Company will not follow the Court's May 18, 2023 order until the Company "gets clear, direct guidance from all agencies that regulate our government contract." (30b6 24:19—26:18, APP 028) The Company later added that it "didn't fully understand the language of the ruling" and will comply with the Judge's ruling only after it has exhausted all appeal options. (30b6 64:3-21, APP 048)

Since the Court's May 18, 2023 ruling, the Defendant has not received anything in writing from the Department of Labor or any governmental agency stating that the Court was wrong in its May 18, 2023 ruling. (30b6 67:11-23, APP 051). Similarly, Defendant has not been told by anyone at the FAA that the company is correctly paying overtime to its employees or that the Court's May 18, 2023 ruling is incorrect. (30b6 69:14-21, APP 052). The FAA employee allegedly in communication with Defendant has also, according to Defendant's president, stated to the Defendant that it is "not doing nothing wrong", a double negative which a jury could take to mean the Company *is* doing something wrong. (30b6 70:21-22, APP 053). The Company's witness later testified that since the May 18, 2023 Order, there have also been no verbal communications from **any** governmental agency saying that the Company is in compliance with the FLSA. (30b6 71:11-18, APP 054) This later testimony contradicted the earlier testimony that the FAA employee had allegedly communicated that Defendant is "not doing nothing wrong."

In addition to the Court's May 18, 2023 Order, the Company understands that the Plaintiffs have articulated that they are losing overtime with each pay period and that those damages

continue to accrue until the company starts paying overtime the way the Court specified. (30b6 103:17—104:5, APP 071). Even though the Company knows that damages are continuing with each pay period, the Company also attempts to claim it is not "intentionally" violating the FLSA, it is merely, "you know, it's a process of the litigation process that we're going through and, you know, once we get that final ruling, we'll follow that ruling." (30b6 104:6-17, APP 072) At another point in the 30(b)(6) deposition, the Company admitted that it could simply change the way it is running payroll to comply with the Court's May 18, 2023 order but stated it was waiting for the "contracting officer" [of the FAA] to tell them to do so. (30b6 104:22—105:3, APP 072)

Later, in the same deposition, the Company stated that despite understanding the Court has stated the Department of Labor does not have the authority to issue a regulation that is in direct conflict with the FLSA and the SCA, that it [the Company] cannot pay overtime the way the Court has ordered in the May 18, 2023 Order because Defendant, "has to follow the rules and regulations the Department of Labor – that they tell us how to pay people. They spell it out discretely how to pay people, the contract's attached to it, and we can't pay no differently." (30b6 109:23—110:24, APP 077). Within the next breath, the Company also admitted that the Court cited to two other Courts that made the same ruling and the Company understands that there are three Courts that have looked at very similar issues and ruled that the Department of Labor regulations are in direct conflict with the FLSA statute. (30b6 111:2-12, APP 079)

And in case there was any doubt that Defendant planned to continue to willfully violate the FLSA going forward, the last question of the 30(b)(6) deposition was:

> Q. Until this case comes to its final conclusion, DFW Security is going to keep paying its employees at this Oklahoma facility overtime that does not calculate the regular rate to include the health and welfare allowance or the uniform allowance, right?
>
> A. Right.

(30b6 165:5-14, APP 114)

It is clear therefore, that DFW Security has chosen to openly defy the Court's May 18, 2023 Order despite being placed on clear notice that its method of calculating the regular rate, and therefore overtime, is in violation of the FLSA. These facts are clear and undisputable based on the testimony of the Company's president. The question before the Court is therefore, does evidence of an *ongoing* willful violation of the FLSA allow a **reasonable inference** that the prior violations were also willful?

That question was answered in *Perez v. El Tequila, LLC*, where the district court, in weighing a post-verdict motion for judgment as a matter of law ("JMOL") regarding the issue of willfulness, stated that evidence of the unquestionable willfulness of FLSA violations *after* the relevant time period, "supports – indeed insists on – an inference" that the defendant's violations *during* the relevant time period were also willful, but that in considering a JMOL, the court could not make inferences or other factual conclusions. *Perez v. El Tequila, LLC*, 2015 U.S. Dist. LEXIS 171446 *3 (N.D. Okla., 2015) The court correctly pointed out that a reasonable jury could also make the opposite inference, that the later willful violations did *not* reflect an earlier willfulness. *Id.* at *4. The *El Tequila* opinion is instructive here, because on summary judgment, wherein all inferences must be made in favor of the non-movant, Plaintiffs, an inference that could go either way, must be

found in favor of Plaintiffs and upon this fact alone, summary judgment should be denied. Because DFW Security is willfully choosing to violate the FLSA despite the Court's May 18, 2023 Order clearly explaining the violation, a reasonable jury could infer that the prior violations (e.g. all the violations before the May 18, 2023 order) were willful too.

### E. Defendant Has Failed to Submit Competent Summary Judgment Evidence

In support of its motion for summary judgment, Defendant submitted the declaration of its CEO and president, Mr. Boutchantharaj. Within the declaration, at paragraph 9, it states:

> It was decided that these health and welfare payments and uniform maintenance payments would not be included in the Plaintiffs' regular rate of pay for purposes of determining Plaintiffs' overtime rates. This decision was based on DFW Security's review and reliance on 29 C.F.R. Sections 4.177(e) and 778.7, and its review of the U.S. Department of Labor Prevailing Wage Resource Book Section on Overtime Pay on SCA Contracts.

(30b6 113:25—114:9, APP 081) Other than this conclusory allegation, the declaration does not contain any explanation of who made this decision, when the decision was allegedly made, or who at DFW Security allegedly reviewed and relied upon 29 C.F.R Sections 4.177(e) and 778.7, or the U.S. Department of Labor Prevailing Wage Resource Book Section on Overtime Pay on SCA Contracts. This sentence, without any supporting statements, is a pure conclusory statement and it does not support Defendant's motion for summary judgment.

Affidavits must contain certain indicia of reliability. *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015). "Unsubstantiated allegations carry no probative

weight in summary judgment proceedings [; they] must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc*., 366 F.3d 869, 875 (10th Cir. 2004)(citation omitted). Information presented in the affidavit must be "based on personal knowledge and [must set] forth facts that would be admissible in evidence. We do not consider conclusory and self-serving affidavits." *Garrett v. Hewlett-Packard Co*., 305 F.3d 1210, 1213 (10th Cir. 2002)(citation omitted)(quoting *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995))(internal quotation marks omitted).

In addition to being a purely conclusory statement, the deposition of Mr. Boutchantharaj, less than two weeks after his declaration was signed, revealed that contrary to this declaration wherein he swore that the statements contained therein were based upon his personal knowledge and upon his personal review of business records made at or near the time by someone with knowledge, it was evident he had no personal knowledge of these claims and there were not business records that supported the sham affidavit. When asked "who" allegedly made the decision referenced in Paragraph 9 of his declaration, Mr. Boutchantharaj claimed it was the contract manager employee of Defendant at the time, Very Kin, who he has not talked to in two years (he then changed his answer to "it has been a while"). (30b6 115:12—116:3, APP 083) Mr. Boutchantharaj then said Paragraph 9, within his declaration, **was not based on his memory**, it was based on her, Ms. Very Kin, doing her job. (30b6 116:23—117:8, APP 084) Mr. Boutchantharaj admitted he has no personal knowledge of this actually happening, other than it was Ms. Kin's job and therefore it must have happened and his assumption that she had many conversations that he was not part of with third parties. (30b6 117:14—118:12, APP 085). When pressed,

Mr. Boutchantharaj finally stated that he was not part of any such conversations and "of course" was "not going to be aware of it". (30b6 119:5—120:8, APP 087 and 30b6 120:21—121:5, APP 088). Instead, he claims it "must have happened." (30b6 121:8-11, APP 089).

Mr. Boutchantharaj's assumption that Ms. Kin, on behalf of the Company, actually spoke with government entities about whether or not to include the health and welfare payments and uniform maintenance payments in the regular rate for purposes of determining overtime was based upon his claim that she "must have" done so, because the company had no issues with the contracting officer, Ms. Cindy Cooper. (30b6 121:12-23, APP 089)

When asked for proof of when Defendant first reviewed the items listed in paragraph 9 of Mr. Boutchantharaj's declaration (29 C.F.R. Sections 4.177(3) and 778.7, and the Department of Labor Prevailing Wage Resource Book on Overtime Pay on SCA contracts), the Company could not offer any, and instead said that it "would have" reviewed them in the 30 to 60 days prior to the start of the contract. (30b6 131:10-23, APP 094)

In paragraph 11 of Mr. Boutchantharaj's declaration, he claims (allegedly based on personal knowledge) that "Even when Plaintiffs' Motion for Partial Summary Judgment was filed, I and others at DF -- others in DFW Security management understood that the treatment of benefit payments under the Service Contract Act was an unsettled question in this jurisdiction, with different courts reaching different conclusions about the propriety of the Department of Labor's approach." (30b6 138:17—138:5, APP 098). But when questioned about this paragraph, Mr. Boutchantharaj had no personal knowledge of the

understanding of others in DFW Security management on these topics, he had not even talked to them about these topics. (30b6 138:6—139:4, APP 098, 30b6 139:8—140:13, APP 099; 142:23—143:9, APP 102). By unsettled in this "jurisdiction", Mr. Boutchantharaj stated at his deposition that he meant the entire United States but he admitted that he has not actually looked at *any* court case that demonstrated this issue was an unsettled question of how to calculate the regular rate for employees like plaintiffs. (30b6 142:7-19, APP 102)

Mr. Boutchantharaj's declaration, which is comprised of unsupported conclusions and which also contains a false statement (under oath) that the conclusions were supported by personal knowledge, is evidence of the Company's mendacity and lack of truthfulness. Establishing willfulness, which requires the fact finder to judge the subjective intent of the Defendant, is similar to how a jury must discern the hidden intent of a defendant in employment discrimination cases. In discrimination cases, the Supreme Court has long held that intent can be discerned by the jury's disbelief of the termination reason, especially when that disbelief is accompanied by a suspicion of mendacity along with the other elements of a prima facie case. *Reeves v. Sanderson Plumbing*, 520 U.S. 133, 147 (2000) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993). Here, the Court has already ruled on the prima facie elements of the FLSA claim. A jury can reasonably infer, from Defendant's mendacity, the intent and willfulness of Defendant in violating (and continuing to violate) the FLSA.

### F. Defendant's Actions Evidence A Reckless Disregard

"Reckless disregard can be shown through 'action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Mumby*, 636 F.3d at 1270 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). The court's focus is on "the employer's diligence in the face of a statutory obligation, not on the employer's mere knowledge of relevant law." *Mumby*, 636 F.3d at 1270; *Boyer v. Celerity Sols. Grp., LLC*, 482 F. Supp. 3d 1122, 1136 (D. Colo. 2020).

Here, at the 30(b)(6) deposition, when asked who was tasked with ensuring compliance with the FLSA for Defendant, the company named two individuals: Tony Gregory, the program manager over the Oklahoma City facility (30b6 156:9-22, APP 108) and Jonathan Hernandez, the finance manager for Defendant, overseeing payroll for all locations. (*Id.* and 30b6 157:5-15, APP 109). The Company also stated that it would have been in the job duties of Jonathan Hernandez and Tony Gregory to look on the internet to see if they could find information about the Fair Labor Standards Act and cases involving the SCA and the payment of guards. (30b6 159:19—160:24, APP 110) Mr. Boutchantharaj stated it was part of their job duties to go online and search to **ensure** the company was following the FLSA. *Id.* He also admitted that *Barnes v. Akal Sec., Inc.*, 2005 WL 1459112, at *3 (D. Kan. June 20, 2005) and *Bonner v. Metro. Sec. Servs., Inc.*, 2011 WL 902252, at *3 (W.D. Tex. Mar. 15, 2011), which are two cases this Court referenced in its May 18, 2023 Order, can be found on the internet using a Google search. *Barnes* is a 2005 decision from within the Tenth Circuit. *Bonner* is a 2011 decision from

the Texas, where DFW Security is headquartered. Both cases involve guard units and security companies litigating the same issue litigated here, the meaning of the SCA and calculation of the regular rate. Both were literally found by Ms. Rattler-Bryceland by doing a simple Google Search. (Rattler-Bryceland Declaration, ¶18, APP 122). Ms. Rattler-Bryceland is a security guard, not a lawyer, and she still found these on-point cases that explained the FLSA and the SCA. Prior to the lawsuit being filed, the Company had not reviewed *Barnes* or *Bonner*. (30b6 64:24—65:9, APP 048, Ex. 4 and Ex. 5, APP 127; and 30b6 66:7-13, APP 050)

And it is not just these two court cases, and the lack of any internet search for them that shows a reckless disregard by Defendant. For instance, despite assuming it must have done so, the Company has zero records of anyone at the Company communicating with the Department of Labor or other agencies regarding how to properly calculate overtime pay for plaintiffs. (30b6 26:19—32:21, APP 030). The Company has no proof, other than the self-serving testimony of its President, that it ever had communications with the Department of Labor or any other federal agency regarding the proper method for calculating the regular rate for plaintiffs. (30b6 39:1—40:6, APP 036) Before this suit was filed, DFW Security had *never* communicated with legal counsel in an effort to figure out if it was calculating overtime correctly for the Oklahoma City facilities. (30b6 58:20-25, APP 044)

A reasonable jury can conclude that DFW Security, a federal contractor with numerous federal contracts[1], could have, and should have, been more diligent in its efforts to comply with the FLSA and that its lack of diligence is some evidence of willfulness.

### G. DFW Security Has Other Violations of the FLSA – It Retaliated Against Plaintiff Rattler-Bryceland By Suspending Her After She Filed This Lawsuit

One of the allegations in this lawsuit is that Defendant retaliated against Ms. Rattler-Bryceland by suspending her without pay shortly after she filed the Original Complaint in this matter. At his deposition, Mr. Boutchantharaj claimed that the suspension had "nothing" to do with this lawsuit. (30b6 89:15-18, APP 064; and 90:16-23, APP 065). But an email dated February 17, 2022, and written by Defendant's regional manager, Tony Gregory, directly referred to the filing of the lawsuit when Mr. Gregory wrote "Bryceland also sent a copy of the federal lawsuit filed by the union alleging DFW was refusing to pay overtime in another attempt to cause harm to the company's reputation with our client. DFW strongly denies the allegations contained in this lawsuit and look forward to defending itself in court." (30b6 92:23-93:18, APP 066, Ex. 12, APP 167). Mr. Boutchantharaj admitted this was a reference to this lawsuit. (30b6 93:25—94:5, APP 067) Ms. Bryceland was suspended on February 17, 2022, the same day as the email from Gregory and the Company admits that an outsider (such as the jury) looking at the suspension letter and Mr. Gregory's email could assume that the suspension was connected

---

[1] In addition to the Plaintiffs within the Oklahoma City facility, Defendant has four other government contracts wherein guards are providing services at federal facilities. (30b6 82:15—83:13, APP 061)

with the FLSA lawsuit referenced in Mr. Gregory's email. (30b6 95:5—96:16, APP 069, Ex. 13, APP 170). If a jury reaches the reasonable conclusion that the suspension was related to Ms. Rattler-Bryceland's protected activity, this will establish another violation of the FLSA by Defendant and would further warrant a jury's finding that DFW Security's violation of the FLSA in underpaying Plaintiffs is a willful violation.

### H. Defendant Advertises An Hourly Rate That Includes The Items It Improperly Excludes From The Regular Rate When Calculating Overtime

The Company admits that when it advertises for armed and unarmed guard positions for the Oklahoma facility, it advertises an "hourly rate" of "$28 hourly" and "$21 hourly" respectively and that a person looking at the job ad would believe those are their hourly rates. (30b6 76:9—78:17, APP 055; Ex. 7 and Ex. 8, APP 154) These "hourly rates" that are posted in Defendant's recruitment advertisements are very close to the rates that are paid under the CBA when adding the hourly wage plus the health and welfare benefit plus the uniform allowance benefit. (30b6 79:5—81:3, APP 058; Ex. 6, APP 152; 30b6 81:16-24, APP 060) That the Company holds itself out as paying this hourly rate when recruiting employees is evidence a reasonable jury could conclude evidences that the Company is luring employees to work based upon a regular rate that includes the fringe benefits that the Company later, improperly, excludes. This evidence of a bait and switch by the Company could cause a reasonable jury to conclude the Company's violation of the FLSA is willful.

Furthermore, there is evidence that even during the hiring process, the Company is still using the advertised hourly rate in its discussion with new employees. For instance,

Mr. Young, who has provided a declaration in this matter, was told when he interviewed with the program manager, Mike Morris, that the hourly rate for armed guards was $28.00 an hour and there was no mention by the Company of a lower hourly rate or any subparts to that hourly rate. (Young Declaration ¶6-7, APP 175) Only later, when he received his first paycheck, did he see a lower hourly rate of $21.90 which was not what was advertised. (Young Declaration ¶8, APP 175)

### I. Defendant Withholds Money From Paychecks But Then Does Not Use It For Intended Purpose

Another disputed fact in this matter is that from the Plaintiffs' perspective, the Company routinely makes payroll errors and they are either very slow to fix the errors, or they never fix the errors despite requests by the employees. (Young Declaration ¶11, APP 175). Another example is that the Company deducted money from the paycheck of Kimberly Haggard for a year, and that money was meant for the purchase of insurance, but the Company had failed to pay the premiums to the insurance company for a year, which caused the coverage to lapse. (Haggard Declaration ¶10-11, APP 183). A reasonable jury could view this as further evidence of the Company's intentional mismanagement of payroll, and further evidence supporting a finding of willfulness regarding the Company's violations of the FLSA.

## IV. Conclusion

There is sufficient evidence in this matter to allow a jury to reach the reasonable conclusion that DFW Security's past and ongoing violation of the FLSA was and is willful. Not only has Defendant failed to put forward admissible summary judgment evidence to

support its arguments, a jury can look to the fact that DFW Security is openly defying the Court's May 18, 2023 Order as evidence that draws a reasonable inference that the company's prior violations were also willful. Furthermore, the evidence creates a reasonable inference that there has been mendacity by the Company president in his declaration, that the company has violated the FLSA by suspending the lead plaintiff in this case days after the suit was filed, and the fact that the Defendant failed to document or undertake any efforts to study the FLSA or seek approval from counsel or government agencies regarding the manner of payment of Plaintiffs' overtime. Even if Defendant disputes these items, the evidence is disputed and a reasonable jury could determine these disputed facts in favor of Plaintiffs rather than Defendant, and summary judgment is inappropriate.

Wherefore, for the above and forgoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion in its entirety.

Dated: Friday, September 15, 2023

Respectfully submitted,

George J. McCaffrey, OBA#5851
McCaffrey & Associates, PLLC
P.O. Box 23865
Oklahoma City, OK 73123
Telephone: (405) 767-3300
Facsimile: (405) 767-3309
Email: George@McCaffreyLegal.com

By: *<u>/s/ Joseph H. Gillespie</u>*
Joseph H. Gillespie
Texas State Bar No. 24036636
Email: joe@gillespiesanford.com
GILLESPIE SANFORD LLP
4803 Gaston Ave.
Dallas, Texas 75246
Phone: (214) 800-5111
Fax: (214) 838-0001

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the above and foregoing document has been served upon Defendant's counsel of record, Nathan L. Whatley, on Friday, September 15, 2023 via the Court's ECF notification system.

By: *<u>/s/ Joseph H. Gillespie</u>*
Joseph H. Gillespie